IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| WALTER J. ROACHE, | Nos. 9:16-cv-1069-JKS |
| Petitioner, | 9:17-cv-574-JKS |
| vs. | MEMORANDUM DECISION |
| DEBORAH MCCULLOCH, Executive Director, Central New York Psychiatric Center,[1] |  |
| Respondent. |  |

Walter J. Roache, a civil detainee proceeding *pro se,* filed a Petition for Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Roache is in New York state custody and involuntarily confined at the Central New York Psychiatric Center ("CNYPC") as a "sex offender requiring civil management" pursuant to Article 10 of the New York State Mental Health Law ("MHL"). Respondent has answered the Petition, and Roache has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

In 1977, Roache pled guilty to public lewdness with respect to two incidents that occurred within two months of each other. Following a jury trial, Roache was also convicted in 1978 of two counts of first-degree rape and two counts of third-degree rape for offenses that occurred while Roache was serving a 1-year probation term on the public lewdness conviction.

---

[1]        Deborah McCulloch, Executive Director, Central New York Psychiatric Center, is substituted for Ann Marie Sullivan, Commissioner of the Office of Mental Health, and the New York State Office of Mental Health. Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts. For purposes of a habeas corpus petition, the proper respondent is the individual "with the ability to produce the [petitioner's] body before the habeas court." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). Such an individual is generally the director of the detention facility because that person has immediate custody over the petitioner. *Id.*

Roache was sentenced to 100 months to 25 years' imprisonment on the four rape counts.  Docket No. 24-1 at 9-10.[2]

Roache subsequently pled guilty in 1992 to first-degree sexual abuse after molesting two young girls who were picking berries.  For those offenses, Roache was sentenced to 3 to 6 years' imprisonment, to run consecutively with the 11 years of undischarged time remaining on Roache's 1978 rape conviction.  Docket No. 24-1 at 11-12.

Prior to the 2010 expiration of Roache's aggregate prison sentence, the State petitioned under MHL § 10 for Roache to remain civilly confined in the State's custody, and Roached was assigned counsel from the Mental Hygiene Legal Service.  On April 23, 2010, the Supreme Court found probable cause pursuant to MHL § 10.06 to believe that Roache would require civil management.  A jury subsequently rendered a unanimous verdict that Roache suffered from a "mental abnormality" that predisposes him to commit sex offenses.  On June 4, 2014, however, the Appellate Division of the Supreme Court of New York set aside that verdict and ordered a new trial, holding that the State's experts improperly provided considerable hearsay that formed the basis of their opinions, and the State failed to establish that the hearsay was reliable in violation of *State v. Floyd Y.,* 22 N.Y.3d 95 (N.Y. 2013).  *State v. Walter R.,* 987 N.Y.S.3d 104 (N.Y. App. Div. 2014).

Following a second trial, a jury rendered a unanimous verdict finding that Roache is a detained sex offender who suffers from a "mental abnormality" as defined in MHL § 10.03(i). Following the jury verdict, the county court held a dispositional hearing on September 16, 2016,

---

[2]     The docket references in this memorandum opinion refer to Lead Case No. 9:16-cv-1069.

and found that Roache is a "dangerous sex offender requiring confinement" as defined by MHL

§ 10.03(e). Thus, on September 21, 2016, the county court granted the State's petition and

directed that Roache remain commitment to a secure treatment facility for care and treatment.

Docket No. 24 at 50-51.

Through counsel, Roache directly appealed the order for commitment, arguing that: 1)

the evidence was legally insufficient to sustain the commitment order; 2) the county court erred

by failing to instruct the jury on the definition of "sex offense" under MHL § 10.03(p); and 3)

the county court erred in admitting double hearsay through the State's expert witnesses. Docket

No. 72-1 at 75-96. Roache filed a supplemental *pro se* appellate brief raising the following

arguments for relief: 1) the county court erred because the experts' evaluations were based on

inadmissible hearsay, including pre-sentencing investigative reports, police reports, and victim

statements; 2) the county court erred in admitting evidence of a prior bad act –namely Roache's

public masturbation at CNYPC; 3) violation of confrontation clause, malicious prosecution and

ineffective assistance of counsel when the State presented hearsay from a witness who never

appeared to testify; 4) the trial judge unlawfully prejudiced the jury by referring to Roache as a

dangerous sex offender during most of the trial; 5) the trial judge had a conflict of interest during

the September 16, 2016, dispositional hearing because he had notice of Roache's 41 U.S.C.

§ 1983 case against him;[3] 6) ineffective assistance of counsel against Randy Siper because the

second trial was delayed beyond 60-day deadline, he failed to defend by providing evidence of

Roache's completion of educational programs while in custody of the State, he failed to

---

[3]	*Roache v. DeRosa, et. al.,* U.S. District Court for the Southern District of New York, Case No. 1:16-cv-06334-CM.

3

adequately prepare, and the jury was prejudiced by seeing Roache in shackles and hand cuffs throughout trial; and 7) ineffective assistance against Richard Lentino for preventing Roache from getting a psychological evaluation and transferring from CNYPC to Manhattan Psychiatric Center and failing to prepare defense for dangerous hearing.  Docket No. 72-1 at 44-66.

On October 31, 2018, the Appellate Division affirmed the county court's finding that Roache is a dangerous sex offender requiring civil confinement.  *State v. Walter J.R.*, 84 N.Y.S. 3d 804 (N.Y. App. Div. 2018).  The appellate court found that "the jury verdict was supported by legally sufficient evidence, since there was a valid line of reasoning by which the jury could conclude that [Roache] suffered from a mental abnormality as defined in [MHL], and the verdict was not contrary to the weight of the evidence, as it was supported by a fair interpretation of the evidence."  *Id.* at 805.  The Appellate Division also rejected Roache's contention that his due process and confrontation rights were violated by the State's expert testimony regarding a statement made by Roache in connection with his prior public lewdness conviction.  *See id.* Finally, the Appellate Division rejected Roache's "remaining contentions, including those raised in his pro se supplemental brief, [as] either unpreserved for appellate review or without merit." *Id.*  Roache petitioned for leave to appeal to the New York Court of Appeals, which was summarily denied on January 10, 2019.  *State v. Walter J.R.*, 117 N.E. 3d 818, 818 (N.Y. 2019).

While his case was pending in state court, Roache challenged his civil confinement and sought immediate release through an initial *pro se* Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 filed in this Court on August 18, 2016.  Case No. 9:16-cv-01069 ("Lead Case"), Docket No. 1.  Around the same time, Roache sought the same relief in another *pro se* petition for habeas relief filed in the Southern District of New York, which was transferred to this Court.

Case No. 9:17-cv-0574 ("Member Case"). This Court, through a previously-assigned district judge, consolidated the two cases.[4] Docket No. 32. The cases are now before the undersigned judge for adjudication.

## I. GROUNDS RAISED

In his *pro se* Petition before this Court, Roache challenges the validity of his civil commitment, arguing that: 1) his confinement is unconstitutional because it is pursuant to an "unsigned" restraining order, he was unconstitutionally held while awaiting second trial, and he has been denied periodic reviews for release; 2) there was an unconstitutional delay of his probable cause hearing and both trials; and 3) counsel rendered ineffective assistance in a variety of ways. Docket No. 1 at 1–10. After Roache's two petitions were consolidated, the following additional grounds for relief, which were already raised before the Southern District of New York, were raised in a supplemental petition: 4) additional grounds for ineffective assistance of counsel; 5) erroneous admission of hearsay through expert witnesses' testimony and diagnoses; and 6) inadmissible hearsay evidence from witnesses who failed to appear in court. Docket No. 33 at 4-6.

In his Reply, Roache raises additional grounds for relief by attacking the validity of the State's expert's psychological evaluation and asserting the trial court committed an evidentiary error by permitting evidence of a prior bad act which was unreliable hearsay. Docket No. 28. The Court does not ordinarily consider grounds raised in a Reply. "The petition must 1) specify *all* the grounds for relief available to the petitioner; 2) state the facts supporting each ground; [and] 3) state the relief requested . . . ." Rules Governing Section 2254 Cases in the U.S. District

---

[4] This memorandum decision refers collectively to these consolidated petitions as "Petition."

Courts, Rule 2(c) (2012) (emphasis added).  Because Roache did not raise these additional

arguments in either of his petitions, he denied Respondent an opportunity to respond to the

claims.  Accordingly, they need not be considered by this Court.  *See Thomas v. Roach*, 165 F.3d

137, 146 (2d Cir. 1999) (declining to consider the plaintiff's argument because it was raised for

the first time in his reply brief ); *United States ex rel. Morgan v. McElroy*, 981 F. Supp. 873, 876

n.3 (S.D.N.Y. 1997) (declining to consider a number of "eleventh hour" claims raised for the

first time in the petitioner's reply brief).

## III. STANDARD OF REVIEW

A person in custody pursuant to the judgment of a state court may file a petition for a writ

of habeas corpus in the United States District Courts if the custody is in violation of the Constitution

or laws or treaties of the United States.  28 U.S.C. §§ 2241(c)(3), 2254(a); *Williams v. Taylor*, 529

U.S. 362, 375 n.7 (2000).  The fact that Roache is challenging his civil commitment for mental

illness rather than his underlying criminal conviction does not change the outcome as civil

commitments are typically challenged in habeas proceedings.  *See Duncan v. Walker*, 533 U.S. 167,

176 (2001) (stating that a state court order of civil commitment satisfies § 2254's "in custody"

requirement).  A person in state custody may challenge his confinement under 28 U.S.C. § 2241 or

28 U.S.C. § 2254.  However, a § 2241 petition generally challenges the execution of a sentence such

as "the administration of parole, computation of a prisoner's sentence by prison officials, prison

disciplinary actions, prison transfers, type of detention and prison conditions."  *Jiminian v. Nash*,

245 F.3d 144, 146 (2d Cir. 2001).  Because Roache challenges the term of his confinement rather

than the conditions surrounding it, he has properly brought his claim under § 2254.  *See Buthy v.*

*Comm'r of Office of Mental Health of New York*, 818 F.2d 1046, 1051-52 (2d Cir. 1987) (petitioning

for a writ of habeas corpus pursuant to § 2254 is the appropriate method for an individual to challenge the fact or duration of his involuntary civil commitment to a state psychiatric institution).

Where a case challenging a civil commitment is initiated by the filing of a petition for habeas corpus, the case is governed by the deferential standard of review prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). *Ernst J. v. Stone,* 452 F.3d 186, 188 (2d Cir. 2006). Under AEDPA, this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied)Where a case challenging a civil commitment is initiated by the filing of a petition for habeas corpus, the case is governed by the deferential standard of review prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). *Ernst J. v. Stone,* 452 F.3d 186, 188 (2d Cir. 2006). Under AEDPA, this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1),

or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this

presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.  Exhaustion

As an initial matter, Roache failed to exhaust several of his claims, including his assertions that his confinement is unconstitutional because it is pursuant to an "unsigned" restraining order, he was unconstitutionally held while awaiting second trial, and denied periodic reviews for release; and that there was an unconstitutional delay of his probable cause hearing and both trials.[5] This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases); *see also Rosado v. McCulloch*, No. 916CV1422TJMCFH, 2018 WL 7960305, at *3 (N.D.N.Y. Sept. 26, 2018), report and recommendation adopted, No. 916CV1422TJMDJS, 2019 WL 1542862 (N.D.N.Y. Apr. 9, 2019) (acknowledging the exhaustion requirement applies to habeas petitions challenging civil commitment proceedings); *Sincere M. v. New York Office of Mental Hygiene*, No. 13-CV-04028 (LDH), 2018 WL 4344947, at *2 (E.D.N.Y. Sept. 11, 2018) (same) (citation omitted).

Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present

---

[5]       Notably, Roache did not bring all of the claims that were exhausted on direct appeal.

the legal basis of the claim. *Id.* at 365-66. An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *See Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005). To be deemed exhausted, a claim must also have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *See Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).

Despite Roache's failure to exhaust a number of his claims, this Court nonetheless may deny those unexhausted claims on the merits and with prejudice. *See* 28 U.S.C. § 2254(b)(2); ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). This is particularly true where the grounds raised are meritless. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005). Accordingly, the Court declines to dismiss these unexhausted claims solely on exhaustion grounds and will instead reach the merits of the claims as discussed below.

B.     Merits

    1.     Unconstitutional confinement (Ground 1)

Roache first argues that he is unconstitutionally held in civil confinement pursuant to an "unsigned restraining order." The referenced order, which he attaches to his Petition, is an Order to Show Cause dated January 27, 2010, initiating an action to determine whether Roache is a sex offender requiring civil management pursuant to MHL ("Order to Show Cause"). Docket No. 1-

1 at 1-2.  Contrary to Roache's assertion, however, the Order to Show Cause was electronically signed by Justice David Murad by printing his name on the signature line.  Regardless, Roache is confined not pursuant to the Order to Show Cause, but instead pursuant to Justice Nicholas DeRosa's September 21, 2016, Order for Confinement, which was properly signed and authorized.  Docket No. 24 at 50-51 ("Order for Confinement").  Roache provides no other basis on which to conclude that either the Order to Show Cause or the Order for Confinement were unconstitutionally entered.  *See Fair v. Duffy*, No. 14 CIV. 4836 (ER), 2017 WL 1410810, at *3 (S.D.N.Y. Apr. 19, 2017) (citing *Nyenekor v. New York*, No. 09 Civ. 8719 (DAB), 2014 WL 785690 (S.D.N.Y. Feb.25, 2014) (adopting the report and recommendation finding that "nonsensical and conclusory allegations" do not fairly present the factual and the legal premises for a court to assess a habeas petitioner's claim); *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982)).

Roache fares no better on his claim that his pre-trial confinement was unlawful.  Pursuant to MHL § 10.06(k), an individual should not be released pending trial after the court determines that probable cause has been established.  In this case, the county court determined that there was probable cause to believe that Roache was a sex offender requiring civil management on April 23, 2010.  That the Appellate Division set aside Roache's first trial in June 2014 does not negate county court's determination of probable cause in 2010.

Finally, Roache's claim that he was denied period review for release is misplaced.  Pursuant to MHL § 10.09, "each respondent committed under this article shall have an examination for evaluation of his or her mental condition made at least once every year."  But Roache has not been entitled to such an evaluation since February 14, 2018, when, by request of

Roache's attorney in the state proceedings, the Oneida County Supreme Court stayed Roache's annual review pursuant to MHL § 10.08(f).[6] Docket No. 72 at 2. And even if there were no stay, this argument seeks relief exclusively on state law grounds, which are not cognizable before this Court on review for habeas relief. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). "We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *see also Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002). Accordingly, Roache is not entitled to relief on any argument advanced in support of this ground.

2.      Speedy trial violations (Ground 2)

Roache further contends that his constitutional rights were violated because the probable cause hearing was delayed for 80 days in violation of MHL § 10.06, which provides that "[w]ithin 30 days after the sex offender civil management petition is filed . . . the county court before which the petition is pending shall conduct a hearing without a jury to determine whether there is probable cause to believe that the [habeas petitioner] is a sex offender requiring civil management." Roache fails to acknowledge MHL § 10.06(h), however, which provides that

---

[6]      This Court takes judicial notice of the docket of the New York State Court system. Judicial notice is "[a] court's acceptance, for purposes of convenience and without requiring a party's proof, of a well-known and indisputable fact; the court's power to accept such a fact." BLACK'S LAW DICTIONARY (10th ed. 2014); FED. R. EVID. 201(b); *see AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003) (taking judicial notice of the court's records is appropriate).

"[a]ny failure to commence the probable cause hearing within the time periods specified shall not result in the dismissal of the petition and shall not affect the validity of the hearing or the probable cause determination." Furthermore, MHL § 10.08(f) provides that "[t]ime periods specified by provisions of this article for actions by state agencies are goals that the agencies shall try to meet, but failure to act within such periods shall not invalidate later agency action." These MHL provisions undermine Roache's argument. Furthermore, this claim is based on state law grounds, and thus is not cognizable on federal habeas review. *See, e.g., Bermudez v. Conway*, No. 09-CV-1515, 2012 WL 3779211, at *9 (E.D.N.Y. Aug. 30, 2012); *Hodges v. Bezio*, No. 09-CV-3402, 2012 WL 607659, at *4 (E.D.N.Y. Feb. 24, 2012); *Rodriguez v. Superintendent*, *Collins Corr. Facility*, 549 F. Supp. 2d 226, 236-37 (N.D.N.Y. 2008).

Roache also contends that there was an unconstitutional delay with respect to both his first and second trials. Preliminarily, Roache has already received relief from any defects of his first trial because, as aforementioned, the Appellate Division set aside that trial and ordered a new one. Thus, his claim with respect to the first trial is denied as moot. *See Johnson v. Smith*, 764 F.2d 114 (2d Cir. 1985) (finding that claims from habeas corpus appeal were moot after retrial occurred). To the extent that Roache raises a claim with respect to his second trial, such claim is not cognizable on federal habeas review. Much like his claim based on MHL § 10, Roache's claim is based on New York's speedy trial protection, New York Criminal Procedure Law ("CPL") § 30.30, and state law exclusively, and thus outside the purview of this Court's review for federal habeas relief.

Construing Roache's *pro se* Petition liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), to the extent he additionally asserts a federal speedy trial claim, he is not

entitled to relief on that claim either. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. CONST. amend VI. This right is enforced against the states through the Due Process Clause of the Fourteenth Amendment. However, as discussed above, constitutional protections afforded to criminal defendants are not necessarily provided to civil litigants, even those in involuntary civil commitment proceedings. *See* U.S. CONST. AMEND. VI. The "fact that a proceeding will result in loss of liberty does not *ipso facto* mean that the proceeding is a 'criminal prosecution' for purposes of the Sixth Amendment." *Middendorf v. Henry*, 425 U.S. 25, 37 (1976). Although the Supreme Court has recognized that an involuntary civil commitment proceeding "constitutes a significant deprivation of liberty that requires due process protection," *Addington v. Texas*, 441 U.S. 418, 425 (1979), the Supreme Court has not clearly established that the Sixth Amendment right to a speedy trial attaches in involuntary civil commitment proceedings, *see Doggett v. United States*, 505 U.S. 647, 655 (1992) ("the Sixth Amendment right of the accused to a speedy trial has no application beyond the confines of a formal criminal prosecution"). Where no principle of clearly established Supreme Court law has been violated, habeas relief is not warranted. *See Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009) ("it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (citations and internal quotations omitted).

Even assuming, without deciding, that the due process clause protects against trial delay in involuntary civil commitment proceedings, Roache fails to show that he is entitled to relief under the test laid out in *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The *Barker* balancing test

14

aids courts in determining whether a speedy trial violation has occurred by assessing: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his speedy trial right; and 4) prejudice to the defendant. *Barker*, 407 U.S. at 530. The list is not exhaustive, and no single factor is dispositive. *Id.* Accordingly, "reasonable minds may disagree in close cases on whether the balance of factors tips in favor of recognizing a violation of the Speedy Trial Clause." *United States v. Ray*, 578 F.3d 184, 191 (2d Cir. 2009); *see also Barker*, 407 U.S. at 521 ("It is, for example, impossible to determine with precision when the right has been denied."). As the Supreme Court made clear in *Barker*:

> [T]he right to a speedy trial is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate. As a consequence, there is no fixed point in the criminal process when the State can put the defendant to the choice of either exercising or waiving the right to a speedy trial.

407 U.S. at 521; *see also Vermont v. Brillon*, 556 U.S. 81, 89 (2009) (the right to a speedy trial is "amorphous," "slippery," and "necessarily relative"); *United States v. Ghailani*, 733 F.3d 29, 41 (2d Cir. 2013).

Here, Roache's second trial began about sixteen months after his first trial was set aside. In light of the four *Barker* factors, Roache's claim fails. First, a sixteen-month delay is shorter than the delays in other cases in which the United States Supreme Court and the Second Circuit have found no Sixth Amendment violation. *See United States v. Vasquez*, 918 F.2d 329, 338 (2d Cir. 1990) (twenty-six month delay did not violate right to speedy trial); *United States v. McGrath*, 622 F.2d 36, 41 (2d Cir. 1980) (twenty-four month delay did not violate right to speedy trial). Moreover, Roache did not assert his right to a speedy trial before the trial court and has not claimed that the delay in the commencement of his second trial caused him to suffer

prejudice or that the delay prevented him from presenting a full defense. Accordingly, Roache cannot prevail on any speedy trial claim.

3.  Ineffective assistance of counsel (Grounds 3, 4)

Roache contends that his counsel were ineffective for a variety of reasons, some of which he argues for the first time in his Petition. However, as discussed above, constitutional protections afforded to criminal defendants are not necessarily provided to civil litigants, even those in involuntary civil commitment proceedings. On its face, the Sixth Amendment right to counsel does not apply in civil actions. *See* U.S. CONST. AMEND. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."). The Supreme Court has not addressed whether a right to counsel under the Sixth Amendment or independently by the Due Process Clause attaches in involuntary civil commitment proceedings, and neither has the Second Circuit so held. *Project Release v. Prevost*, 722 F.2d 960, 976 (2d Cir. 1983) (assuming, without deciding, that there is a right to counsel under the due process clause because "[a] right to counsel in civil commitment proceedings may be gleaned from the Supreme Court's recognition that commitment involves a substantial curtailment of liberty and thus requires due process protection" (*citing Addington*, 441 U.S. at 425-27)); *cf. Ambrose v. Roeckeman,* 749 F.3d 615, 619-20 (7th Cir. 2014) (declining to decide whether there is a constitutional right to appellate counsel in civil commitment appeals). In fact, other Circuit Courts have held that individuals subject to civil commitment do not have a right to counsel. *See United States v. Lesch*, 717 Fed. App'x 244, 247 (4th Cir. 2018) (holding that a person subject to civil commitment because he is a sexually dangerous person under state law "'does not have a right to effective assistance of counsel under

the Sixth Amendment.'  In the past, this court has declined to decide whether such a right exists under the Due Process Clause of the Fifth Amendment, and we need not decide that question today.") (citations omitted); *Young v. King County,* 70 Fed. App'x 939 (9th Cir. 2003) (holding that a person subject to civil commitment isnot entitled to Sixth Amendment right to counsel). Where there is no principle of clearly established Supreme Court law, the Petition cannot show a violation, and habeas relief is not permitted.  *See Knowles*, 556 U.S. at 121.

And even if there is an independent due process right to effective counsel in civil commitment proceedings, it is no broader than that afforded by the Sixth Amendment.  Thus, by analogy, this Court will refer to the two-prong test for ineffective assistance of counsel claims based on the Sixth Amendment laid out in *Strickland v. Washington*.  466 U.S. 668, 687 (1984). To demonstrate ineffective assistance of counsel under *Strickland*, a defendant must show both that his counsel's performance was deficient, and that the deficient performance prejudiced his defense.  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*  The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *See Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.

Thus, Roache must show that his counsel's representation was not within the range of competence demanded of attorneys in similar cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.  *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985).  Only in "the exceedingly rare and exceptional case" will there be a

finding that "the state court's decision involved an 'unreasonable application' of *Strickland.*"

*Rivas v. Fischer*, 780 F.3d 529, 550 (2d Cir. 2015) (citing 28 U.S.C. § 2254(d)). Ultimately, the

petitioner bears the burden of proof to overcome the strong presumption that counsel acted

reasonably to show that counsel's "performance render[ed] the result of the trial unreliable or the

proceeding fundamentally unfair." *Williams,* 529 U.S. at 393 n.17 (2000); *see also, Garner v.*

*Lee*, 908 F.3d 845, 865 (2d Cir. 2018), *cert. denied,* 139 S. Ct. 1608 (2019) (citing *Waiters v.*

*Lee*, 857 F.3d 466, 479 (2d Cir.), *cert. denied sub nom. Waiters v. Griffin*, 138 S. Ct. 385

(2017)). The Petitioner cannot merely speculate as to how counsel might have executed a

different trial strategy. *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

In reviewing an ineffective assistance of counsel claim on federal habeas review:

> "The question 'is not whether a federal court believes the
> state court's determination' under the *Strickland* standard 'was
> incorrect but whether that determination was unreasonable—a
> substantially higher threshold.' And, because the *Strickland*
> standard is a general standard, a state court has even more latitude
> to reasonably determine that a defendant has not satisfied that
> standard."

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *accord Waiters at* 478.

An ineffective assistance of counsel claim should be denied if the petitioner fails to make a

sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts

may consider either prong of the test first and need not address both prongs if the defendant fails

on one).

Roache's ineffective assistance claims fail to satisfy the *Strickland* standard. Roache

contends that trial counsel failed to adequately prepare a defense by arriving late and missing

scheduled meetings with Roache and by presenting a closing argument that was too short. But

but he does not demonstrate how these actions prejudiced his defense or describe with particularity what his counsel should have done differently. *See, e.g.*, *Powers v. Lord*, 462 F. Supp. 2d 371, 381-82 (W.D.N.Y. 2006) (laying out the general rule that "undetailed and unsubstantiated assertions [about counsel's alleged shortcomings] have consistently been held insufficient to satisfy either Strickland prong" (citation omitted)). The record shows that, in fact, Siper successfully requested Roache's transfer to a facility closer to counsel 30 days before trial so that he could more effectively prepare. Docket No. 24-1 at 74-77. Roache also contends that Siper failed to timely seek records that demonstrated Roache's satisfactory completion of educational and treatment programs during his confinement. To the contrary, Roache admits on reply that Siper presented to the jury evidence demonstrating that Roache completed various courses and certificates regarding anger and aggression management. Docket No. 28 at 9. Moreover, the record demonstrates Siper's familiarity with the programs Roache completed and that Siper made use of them at trial. *See* Docket No. 24-1 at 156-57; 166-67; 191-94; 206-14; and 220.

Roache next argues that Siper prevented him from presenting five witnesses during his second trial. Preliminarily, Roache never provided a sworn affidavit or declaration from any of these potential witnesses setting forth the proposed testimony and affirmatively stating that they would have actually testified if called. *See McCray v. Ercole*, No. 07 Civ. 6589, 2010 WL 6804661, at *7 (S.D.N.Y. Dec. 16, 2010) ("The failure to call a witness is particularly unlikely to constitute ineffective assistance in the absence of an affidavit or other evidence that the proposed witness would have provided relevant testimony."); *see also Schulz v. Marshall*, 528 F. Supp. 2d 77, 96 n.13 (E.D.N.Y. 2007) ("In evaluating claims of ineffective assistance of counsel based on

failure to investigate witnesses, courts place weight on a defendant's ability to show that these witnesses would have had helpful information.") (collecting cases). Moreover, the ultimate decision of whether to call witnesses to testify is well within counsel's "full authority to manage the conduct of the [proceeding]." *Taylor v. Illinois*, 484 U.S. 400, 418 (1988) ("Putting to one side the exceptional cases in which counsel is ineffective, the client must accept the consequences of the lawyer's decision . . . to decide not to put certain witnesses on the stand."). "The decision of whether to call any witnesses on behalf of a defendant, and which witnesses to call or omit to call, is a tactical decision which ordinarily does not constitute incompetence as a basis for a claim of ineffective assistance of counsel." *Speringo v. McLaughlin*, 202 F. Supp. 2d 178, 192 (S.D.N.Y. 2002); *see also United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987). Ineffective assistance claims based on a failure to call certain witnesses are disfavored on habeas review because "allegations of what a witness would have testified [to] are largely speculative." *Speringo*, 202 F. Supp. 2d at 192 (citation omitted); *see also Montalvo v. Annetts*, 02 Civ. 1056, 2003 WL 22962504 (S.D.N.Y. Dec. 17, 2003) (the decision not to call a particular witness "generally should not be disturbed" because of "its inherently tactical nature"). Indeed, Roache does not demonstrate that either lay or expert witnesses would have provided beneficial testimony or that the omission of such testimony deprived him of a fair trial.

Roache also contends that Siper prevented Roache from testifying on his own behalf during the second trial. It is undisputed that a defendant in a criminal case has a constitutional right to testify on his own behalf.[7] *See Rock v. Arkansas*, 483 U.S. 44, 49 (1987) ("[I]t cannot be

---

[7] The federal counterpart of MHL Article 10, the Adam Walsh Child Protection and Safety Act of 2006, provides that the subject of an involuntary commitment hearing "shall be afforded an opportunity to testify." 18 U.S.C. § 4247(d). For purposes of this proceeding, the

doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense."). The Second Circuit "has repeatedly held that defense counsel must inform a criminal defendant 'of the nature and existence of the right to testify,' and that this obligation is a component of effective assistance." *Zayac v. United States*, 771 Fed. App'x 54, 55 (2d Cir. 2019) (quoting *Brown v. Artuz*, 124 F.3d 73 , 79 (2d Cir. 1997)). "Although counsel has the right, and indeed the professional duty, to advise his client of the benefits and pitfalls of a decision to take the stand on his own behalf, the ultimate decision regarding whether to testify belongs to the defendant." *Brown v. Artuz*, 124 F.3d 73, 78 (2d Cir. 1997) (internal citation omitted), *cert. denied*, 522 U.S. 1128 (1998). However, unlike the waiver of some fundamental rights, there is "no general obligation on the trial court to inform a defendant of the right to testify and ascertain whether the defendant wishes to waive that right." *Id*. at 79 ("[T]he judge need not intervene when counsel announces that the defendant rests and the defendant has not testified.").

In this case, Roache clearly knew he could testify at the second trial because the record shows that he testified at his first trial. The record does not indicate that Roache ever expressed to the trial court that he intended or desired to testify over counsel's objections or advice. While Roache may now wish, with the benefit of hindsight, that he had testified at the second trial, the record reflects that he voluntarily waived that right. Moreover, Roache provides nothing to demonstrate the substance of his proposed testimony or that it would have resulted in a differnet verdict, and thus fails to establish prejudice under *Strickland*.

---

Court assumes that an individual facing the threat of civil commitment also has a constitutional right to testify on his own behalf.

Finally, Roache contends that his counsel failed to properly defend against the State's presentation of hearsay evidence from a woman with a young child who Roache was accused of stalking. The trial court permitted the State to introduce as evidence of grooming love letters, gifts, and phone and voicemail transcripts from Roache, but neither the woman nor her child testified at trial about their interactions with Roache. During the pre-trial hearing on the admissibility of the hearsay evidence,[8] Siper reserved an objection pending his review of the evidence, but the Court ruled that this evidence was admissible on its face because it contained relevant subject matter and was reliable because it consisted of Roache's own statements. Docket No. 24-1 at 70-71. Siper cross-examined the State's experts regarding this evidence, but had no sound basis upon which to object to the non-production of these individuals. Moreover, given that the State's experts testified at length about Roache's uncontrollable sexual urges, counsel may reasonably have chosen to avoid the risk of having the woman and her child in Roache's presence at trial. *See McKee v. United States*, 167 F.3d 103, 106 (2d Cir. 1999) ("Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance, and a court may not use hindsight to second-guess counsel's tactical choices." (citations and internal quotation marks omitted)). Accordingly, there is no clear misapplication of established Supreme Court law in the Appellate Division's rejection of Roache's ineffective assistance claims.

---

[8] Under New York law, the State must identify all hearsay evidence it intends to introduce as basis testimony upon which its experts relied in forming their opinions, and the court holds a hearing to determine its admissibility. This hearing is referred to as a "Floyd Y." hearing based on the Court of Appeals' decision in that case. *See State v. Floyd Y.*, 22 N.Y.3d 95, 107 (N.Y. 2013) ("we have held that hearsay may play a role in an expert's testimony because the expert may base an opinion on hearsay if it 'is of a kind accepted in the profession as reliable in forming a professional opinion'").

4. <u>Evidentiary errors (Grounds 5, 6)</u>

Roache's first trial was set aside because the Appellate Division determined that the State's experts had relied on unreliable hearsay evidence regarding unproven accusations at trial which violated his constitutional right to due process. *State v. Walter R.,* 987 N.Y.S.3d 104 (N.Y. App. Div. 2014). The Appellate Division held that in "article 10 trials, hearsay basis evidence is admissible if it satisfies two criteria. First, the proponent must demonstrate through evidence that the hearsay is reliable. Second, the court must determine that the 'probative value in helping the jury evaluate the [expert's] opinion substantially outweighs [its] prejudicial effect.'" *Id.* at 715 (quoting FED. R. EVID. 703); *see also State v. Floyd Y.,* 22 N.Y.3d 95, 109 (N.Y. 2013).

Before the second trial, the Orange County Supreme Court held a Floyd Y hearing to evaluate the reliability and substantial relevance of the evidence. With respect to expert testimony, the Court specifically ruled "if [Roache] admitted that to [expert], obviously [the expert] can testify to it, but he can't testify to it from another document." Docket No. 24-1 at 64. During trial, the psychological experts had access to their reports in order to refresh their recollection, but only provided oral testimony. Docket No. 24-1 at 89. The jury did not see the expert reports because they were not admitted into evidence.

As he did following his first trial, and on appeal after the second trial, Roache contends that the State's expert witnesses' testimony and diagnoses were based on inadmissible hearsay in violation of New York law. Docket No. 33 at 5. Specifically, Roache contends that the State's psychologists based their diagnoses on Roache's pre-sentencing investigation reports, police reports, and victim statements, which are inadmissible hearsay in violation of *State v. Dove*, 846

N.Y.S.2d 863 (N.Y. Sup. Ct. 2007).  The Appellate Division summarily denied this claim as without merit.

Roache fares no better on federal habeas review.  Roache's Petition raises a claim that is grounded in state law exclusively rather than any violation of the federal Constitution.  As noted above, it is well-settled that issues of improper application of state law are beyond the purview of this Court in a federal habeas proceeding.  *See Swarthout v. Cooke*, 562 U.S. 216, 221–22 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.  *See, e.g., Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona,* 536 U.S. 584 (2002).

To the extent that Roache's Petition could be broadly construed, *see Erickson*, 551 U.S. at 89, to raise a federal due process or confrontation claim, such claims are cognizable but nonetheless without merit.  The Confrontation Clause mandates that a criminal defendant has the right to confront and cross-examine the witnesses against him.  *See Pennsylvania v. Ritchie,* 480 U.S. 39, 51 (1987).  This generally means that out-of-court testimonial statements by a witness are not admissible against a defendant unless the witness is available for cross-examination at trial or the defendant had an opportunity to cross-examine the witness about the statements before trial.  *Crawford v. Washington,* 541 U.S. 36, 53-54 (2004).  However, as discussed thoroughly above, constitutional protections afforded to criminal defendants are not necessarily

provided to civil litigants, even those in involuntary civil commitment proceedings.  The

Supreme Court has not clearly established that the Sixth Amendment right to confront and cross-

examine witnesses attaches in involuntary civil commitment proceedings.  *See Pennsylvania v.

Ritchie*, 480 U.S. 39, 52 (1987) ("the right to confrontation is a [criminal defendant's] trial right,

designed to prevent improper restrictions on the types of questions that defense counsel may ask

during cross-examination.")*; Barclay v. New York,* 602 F. App'x 7, 13 (2d Cir. 2015) (holding

that Sixth Amendment right to confrontation did not apply in state inmate's civil action against

State and prison officials); *Walker v. Hadi,* 611 F.3d 720, 724 (11th Cir. 2010) (rejecting state

civil detainee's confrontation claim because state court decision was not contrary to, or an

unreasonable application of, federal law in absence of Supreme Court holdings requiring state

court to exclude testimonial hearsay evidence in a civil commitment hearing); *Carty v. Nelson,*

426 F.3d 1064, 1073 (9th Cir. 2005).  Where no principle of clearly established Supreme Court

law has been violated, habeas relief is not warranted.  *See Knowles*, 556 U.S. at 121.

Although the Due Process Clause may protect against a state court's improper admission

of hearsay evidence, *see Michigan v. Bryant*, 562 U.S. 344, 371 (2011) ("the Due Process

Clauses of the Fifth and Fourteenth Amendments may constitute a further bar to admission of,

for example, unreliable evidence.") (citations omitted); *Montana v. Egelhoff*, 518 U.S. 37, 53

(1996) (plurality opinion) ("[E]rroneous evidentiary rulings can, in combination, rise to the level

of a due process violation"); *Dutton v. Evans*, 400 U.S. 74, 96-97 (1970) (Harlan, J., concurring

in result) ("[T]he Fifth and Fourteenth Amendments' commands that federal and state trials,

respectively, must be conducted in accordance with due process of law" are the "standard" by

which to "test federal and state rules of evidence"), the petitioner must first "demonstrate that the

state court's erroneous conclusions about New York evidence law were so egregious as to implicate the Fourteenth Amendment's guarantee of due process. That guarantee, in this case, is one of 'fundamental fairness,' a principle that the Supreme Court has 'defined . . . very narrowly,'" *Evans v. Fischer*, 712 F.3d 125, 133 (2d Cir. 2013) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). Establishing a violation of fundamental fairness is a more general rather than specific rule, and "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004). Moreover, a hearsay "[e]rror is harmless if it is highly probable that it did not contribute to the verdict." *United States v. Gomez,* 617 F.3d 88, 95 (2d Cir. 2010) (quoting *United States v. Kaiser*, 609 F.3d 556, 573 (2d Cir. 2010)). In determining whether an alleged error is harmless, a court considers, among other factors, "the importance of the wrongly admitted testimony" and "whether such evidence was cumulative of other properly admitted evidence." *United States v. Kaplan,* 490 F.3d 110, 123 (2d Cir. 2007).

Upon independent review, the Court concludes that the Appellate Division's rejection of Roache's evidentiary claim is reasonable and fully supported by the record. Under both federal and New York law, expert testimony "is not rendered inadmissible" merely because it relies on other evidence which is itself not admissible. *See* Fed. R. Evid. 703 ("If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted."); *State v. Floyd Y.,* 22 N.Y.3d 95, 107 (N.Y. 2013) ("we have held that hearsay may play a role in an expert's testimony because the expert may base an opinion on hearsay if it 'is of a kind accepted in the profession as reliable in forming a professional opinion'").

In accordance with the trial court's Floyd Y ruling, the experts described Roache's own statements from the underlying records or read from documents properly admitted into evidence. *See, e.g.,* Docket No. 24-1 at 98 (quoting Roache's statement in pre-sentence investigation report regarding his 1977 conviction); 102 (describing Roache's statement in a 1978 mental health evaluation); 151, 153,199-201, 231-232, 238 (describing Roache's statements during Dr. Hadden's interview of him);183-84, 311-12 (quoting from Roache's love letters to a woman and her young child); 234-35 (quoting from a certified progress note regarding Roache's demotion to phase 1); 280 (describing Roache's statements regarding his conviction for public lewdness in 1978); 292 (describing Roache's statements regarding a parole violation and conviction in 1992); and 300-01 (describing Roache's prior inconsistent statement regarding denying his prior convictions).  They opined, based on their education and experience and a reasonable degree of certainty in the field of psychology, that Roache suffers from a mental abnormality after considering information of the type that is typical in psychology, including Roache's criminal and behavioral history, treatment records, pre-sentence investigation reports, police records, statements from past victims, parole records, hearing transcripts, District Attorney records, court records, Board of Examiners of Sex Offenders records, military records, and Orange County Sheriff's Office records.  *See generally* Docket No. 24-1 at 89, 142, 266-67.  Because Roache's history is so extensive, and his first sex offense conviction goes back to 1978, the experts reviewed thousands of pages of such records in preparation.  Furthermore, during trial the Court gave a limiting instruction to the jury:

> Testimony concerning the information the expert relied upon may be considered solely for the purpose of evaluating this witness's credibility and his opinions and understanding the basis of his conclusions.  That's the only reason you can use that underlying material.  You must not consider the testimony or the

27

information relied upon by the witness for the purpose of establishing the truth of the allegations made in that information that was relied upon by the expert witness.

Docket No. 24-1 at 245.

It is somewhat troubling that the State did not call any victims to testify as to their personal encounters with Roache but instead relied exclusively on expert testimony. However, the record evidence underlying the expert testimony is overwhelming. On independent review, this Court cannot find that the Appellate Division's rejection of Roache's claim is anything but reasonable and in compliance with clearly established Supreme Court law.

## V. CONCLUSION

Roache is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the

issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment in each case accordingly.

Dated: September 12, 2019.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge
